UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


TASHA WIMBLEY CRAWLEY,

     Plaintiff,

v.                                                                    Case No. 8:17-cv-2218-T-CPT

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner of
Social Security,

     Defendant.
_____/


## **O R D E R**

     The Plaintiff seeks judicial review of the Commissioner's decision to terminate

her Disability Insurance Benefits (DIB).   For the reasons discussed below, the

Commissioner's decision is affirmed.

### I.

     The Plaintiff was born in 1979, has a high school education, and has past

relevant work experience as a customer service representative.  (R. 47, 51-52, 64).  In

January 2004, the Plaintiff was found disabled as of August 12, 2003, because of an

epileptic condition, which met or medically equaled the severity of the listed

impairment for epilepsy—namely, Listing 11.02A—found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 10-12).

On February 7, 2014, as part of the continuing disability review process, the Social Security Administration (SSA) determined the Plaintiff had experienced medical improvement and was no longer disabled as of that date.  (R. 10).  That determination was upheld on reconsideration by a state agency disability officer.  *Id.*

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on February 4, 2016.  (R. 37-67).  At that hearing, the Plaintiff elected to proceed *pro se* after waiving her right to counsel and testified on her own behalf.  (R. 37-62, 66-67, 128).  A vocational expert (VE) also testified.  (R. 63-66).

In a decision dated September 26, 2016, the ALJ found that: (1) at the time of the comparison point decision (CPD) in January 2004, the Plaintiff had epilepsy meeting Listing 11.02A; (2) as of February 7, 2014, the Plaintiff had the non-severe medically determinable impairments of anxiety, anemia, hypertension, and depression/mood disorder and the severe medically determinable impairment of epilepsy; (3) as a result of medical improvement that occurred as of February 7, 2014, however, the Plaintiff did not have an impairment or combination of impairments, which met or medically equaled the severity of any of the listed impairments; (4) the Plaintiff had the residual functional capacity (RFC) as of February 7, 2014, to perform light work subject to certain physical and environmental limitations; and (5) the Plaintiff was capable of performing her past relevant work as a customer service

representative as of February 7, 2014.  (R. 12-18).  In light of these findings, the ALJ concluded that Plaintiff's disability ended on February 7, 2014.  (R. 18).

The Appeals Council denied Plaintiff's request for review (R. 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

## II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a); 416.905(a).[1] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Once an individual has been found to be disabled, their continued entitlement to benefits is subject to periodic review.  20 C.F.R. §§ 404.1594(a), 416.994(a).  Upon conducting such a review, the Commissioner may terminate benefits if she finds that (1) there has been medical improvement in the claimant's impairment or combination of impairments related to the claimant's ability to work; and (2) the claimant is able to engage in substantial gainful activity.  42 U.S.C. § 423(f)(1).

In continuing disability cases, the Commissioner applies the procedures set forth in 20 C.F.R. §§ 404.1594 and 416.994.  These regulations require a multi-step

---

[1] Unless otherwise indicated, all citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

3

analysis in deciding whether a disability has ended. First, there must be a determination: (1) whether the claimant has engaged in substantial gainful activity; (2) if not, whether the claimant suffers from an impairment or combination of impairments that meet or equal a listed impairment; (3) if not, whether there has been medical improvement; (4) if so, whether such medical improvement relates to the claimant's ability to do work; (5) if so, whether the claimant's current impairments are severe; and (6) if so, whether the claimant has the RFC to perform her past relevant work or, if not, whether she can perform other work given her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1594(f), 416.994(f).

"Medical improvement" is defined under the regulations as "any decrease in the medical severity of . . . impairment(s) [that] was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1)(i), 416.994(b)(1)(i). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.* A medical improvement is only related to an individual's ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities." 20 C.F.R. §§ 404.1594(b)(1)(iii), 416.994(b)(1)(iii); *see also Demenech v. Sec'y of Health & Human Servs.*, 913 F.2d 882, 883 n.2 (11th Cir. 1990). To determine whether there has been medical improvement, the Commissioner must compare the new medical evidence with the medical evidence

that supported the most recent final decision holding that the claimant is disabled. *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) (per curiam); *see also* 20 C.F.R. §§ 404.1594(c)(1), 416.994(c)(1).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. *See* 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Although no deference is given to the Commissioner's legal conclusions, her findings of fact "are conclusive if they are supported by 'substantial evidence.'" *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotation and citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Hargress*, 883 F.3d at 1305 n.2 (citation omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

## III.

The Plaintiff's sole argument on appeal is that the ALJ failed to fully and fairly develop the record with respect to the Plaintiff's mental impairments. (Doc. 23 at 7). In particular, the Plaintiff asserts that the ALJ should have ordered a mental

consultative examination (CE) and that, because she did not, her finding that the Plaintiff's mental impairments were not severe lacked "a substantive basis." *Id*. at 9. In response, the Commissioner argues that the ALJ properly found that the Plaintiff did not suffer from a severe mental impairment and that, as a result, there was no need for the ALJ to further develop the record on the issue. (Doc. 24 at 4-12). Upon a thorough review of the record and the parties' submissions, the Court finds no cause for reversal or remand.

The Court begins its analysis with the Plaintiff's contention that the ALJ erred in finding that the Plaintiff's mental impairments were not severe. As noted, where the SSA finds that medical improvement has occurred, the ALJ must gauge whether the claimant's current impairments are severe. 20 C.F.R. § 404.1594 (citing § 404.1521). The severity of an impairment is "measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). As a result, an impairment is considered severe only if it significantly limits a claimant's physical or mental abilities to engage in basic work activities. 20 C.F.R. §§ 404.1520, 404.1521(a), 416.920, 416.921(a); *Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987)). A non-severe impairment, on the other hand, is one that does not result in such a limitation. 20 C.F.R. §§ 404.1522, 416.922.

In this case, the ALJ found that the Plaintiff's mental impairments were not severe because they were generally controlled with conservative treatment and did not cause her to suffer any work-related limitations. (R. 13-14). This finding is supported

by substantial evidence. That evidence includes the Plaintiff's report in November 2014 to her primary care provider, Dr. Colleen Campbell, that her mood had improved with medication and that she was able to tolerate that medication; Dr. Campbell's assessment that the Plaintiff's anxiety and mood disorder were "stable;" and the testimony of the Plaintiff at the ALJ hearing that her medications were effective in helping control her anxiety-related symptoms and that she had neither been hospitalized for any mental health issues nor received care from a mental-health specialist. (R. 13, 48, 443-44).

In an effort to undermine this evidence, the Plaintiff now asserts that she was seeing a mental health treatment provider, that her treating sources found her to have "psychiatric issues," and that they prescribed her certain medications and recommended that she consult a psychiatrist. (Doc. 23 at 8). These assertions are unpersuasive. In contravention of her first claim, the Plaintiff testified at the ALJ hearing that she had never seen any type of mental health professional. (R. 48). As to her other claims, the mere diagnosis of a mental condition or evidence that a claimant has been treated with medication are insufficient, in and of themselves, to demonstrate the severity or functional impacts of a claimant's alleged impairments. *See Moore*, 405 F.3d at 1213 n.6 (distinguishing existence of plaintiff's leg and shoulder impairments from more salient issue of their impact on plaintiff's ability to work).

Even were the ALJ to have erred in finding that the Plaintiff's mental impairments were not severe, any such error was harmless. The ALJ explicitly stated that she considered the Plaintiff's non-severe impairments at the later stages of the

sequential evaluation process when crafting the Plaintiff's RFC and in assessing her ability to work. (R. 14, 16); *see Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [plaintiff's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *Jones v. Dep't of Health & Human Servs.,* 941 F.2d 1529, 1533 (11th Cir. 1991) (accepting as adequate clear statement of ALJ that he considered plaintiff's impairments in combination).

The Plaintiff's contention that the ALJ failed to fully and fairly develop the record by not ordering a mental CE likewise fails. While an ALJ has a basic and firmly-established duty to develop a full and fair record of the facts relevant to a claimant's application for benefits, *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007), this duty does not require an ALJ to order a CE wherever there is evidence that a claimant may suffer from a particular impairment. Instead, an ALJ "may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [her] to make a determination or decision on [a] claim." 20 C.F.R. § 404.1519a. Importantly, the ALJ need not exercise this discretion in favor of ordering a CE "as long as the record contains sufficient evidence for [her] to make an informed decision." *Ingram*, 496 F.3d at 1269 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)).

Here, the record as a whole contains scant indication that the Plaintiff suffered from any significant mental health issues. That evidence included the Plaintiff's aforementioned testimony before the ALJ; the above-referenced records of the Plaintiff's treatment with Dr. Campbell; records of the Plaintiff's treatment with her neurologist, Dr. Eddy Berges, in 2007 and 2008 and from 2010 through 2013; and records of the Plaintiff's treatment at Tampa General Hospital in 2009 and 2010 and at USF Health in 2010 and 2014. (R. 13-17). In addition, at the hearing, the ALJ inquired as to the existence of additional medical records and subsequently supplemented the record with evidence of the Plaintiff's more recent treatment with Dr. Berges in 2014; Dr. Ambica Tumkur, another neurologist, in December 2015; and Dr. Campbell throughout 2014 and 2015. (R. 42-43, 129-30, 218-19). The ALJ also considered evidence taken at the Plaintiff's May 2014 hearing before the disability hearing officer. (R. 15).

These records reveal that, to the extent the Plaintiff had any mental health issues, they were not severe. Indeed, as even the Plaintiff acknowledged during her testimony before the ALJ, it was her seizures—not any mental impairments—that interfered with her ability to work, to engage in certain activities of daily life, and to perform personal care. (R. 47-52).

In light of the above, the ALJ did not have a duty to further develop the record relative to the Plaintiff's mental impairments by ordering a mental CE. *See Sneed v. Barnhart*, 214 F. App'x 883, 886 (11th Cir. 2006) (concluding that brief references in the record to plaintiff's depression and anxiety, which were being treated with

medication, indicated a non-severe mental disorder insufficient to trigger ALJ's duty to obtain a CE); *Slocumb v. Comm'r of Soc. Sec.*, 2017 WL 2889804, at *3 (M.D. Fla. May 15, 2017) (citing *Holliday v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1998)) ("Indeed, because the Social Security Act requires only substantial evidence to support the ALJ's findings, a consultative examination is not required to establish absolute certainty regarding Plaintiff's condition.").

The cases upon which the Plaintiff primarily relies in arguing to the contrary—*Ford v. Sec'y of Health & Human Servs.*, 659 F.2d 66 (5th Cir. 1981), and *McCall v. Bowen*, 846 F.2d 1317 (11th Cir. 1988)—are unavailing. The ALJ in *Ford* failed to make a clear factual determination as to the severity of the claimant's mental condition and gave it short shrift in his administrative decision, despite compelling evidence of this impairment in the record. 659 F.2d at 69. In particular, the record evidence in *Ford* included an express diagnosis of the plaintiff's depressive neurosis from a mental health clinic at which she was examined and received counseling, along with the counselor's opinion that that the plaintiff was "emotionally unstable and unable to work." *Id.* *McCall* similarly involved statements from the Plaintiff and her treating physicians regarding her emotional problems that counseled in favor of obtaining additional expert evidence in this regard. 846 F.2d at 1320.[2]

---

[2] *McCall* is also distinguishable insofar as it involved the Commissioner's duty under 42 U.S.C. § 421(h) to obtain the opinion of a qualified psychiatrist or psychologist before making a disability determination, a duty the Eleventh Circuit has suggested does not apply to ALJ determinations. *Sneed*, 214 F. App'x at 886 (citation omitted).

By contrast, the ALJ here rendered an express assessment of the severity of the Plaintiff's mental conditions, and the record before her lacked any comparable mental health treatment records, statements from the Plaintiff, or findings from medical sources that could reasonably have led the ALJ to conclude that a CE was warranted.

The fact that the Plaintiff elected to proceed *pro se* at the hearing does not alter the Court's analysis of the ALJ's obligation to develop the record. Although an ALJ has a "special duty" to develop the record where the claimant is unrepresented, that heightened duty does not apply where the claimant has waived her right to counsel. *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) ("The ALJ has a special duty to ensure the record demonstrates that an *unrepresented* claimant who did not waive counsel was not prejudiced by the lack of counsel. By implication, where counsel has been waived, the special duty to develop the record does not take effect." (citing *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995))); *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982) ("When a claimant who has not waived his right to counsel represents himself in a hearing, the hearing examiner's obligation to develop a full and fair record rises to a special duty. This special duty requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel.") (citation omitted). As the Plaintiff waived her right to counsel here, the ALJ was not under a heightened obligation to develop the record.[3]

---

[3] The Court notes in this regard that the Plaintiff signed and dated a "Waiver of Representation" form (R. 128) after engaging in a robust colloquy on the matter with the ALJ (R. 39-42).

Even assuming *arguendo* that the ALJ failed to fully and fairly develop the record, the Plaintiff is not entitled to remand. A plaintiff seeking remand of her case where an ALJ has declined to order a CE must show not only that the ALJ erred in doing so, but also that the plaintiff was prejudiced by the ALJ's decision. *Mosley v. Acting Comm'r of Soc. Sec. Admin*, 633 F. App'x 739, 742 (11th Cir. 2015) (citing *Brown*, 44 F.3d at 935). Only where "the record reveals evidentiary gaps which result in unfairness or clear prejudice" may a court find that remand is appropriate. *Id.* (quoting *Brown*, 44 F.3d at 935).

Here, the Plaintiff has failed to establish that the record contains evidentiary gaps which have resulted in unfairness or clear prejudice to her. As alluded to above, the record does not evidence any functional limitations stemming from the Plaintiff's mental impairments. Consequently, her request for remand fails.

IV.

For the foregoing reasons, it is hereby ORDERED:

1) The Commissioner's decision is AFFIRMED.

2) The Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

DONE and ORDERED in Tampa, Florida, this 29th day of March 2019.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

12